# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **JEFFREY WILLS LUSK,** Individually and as Executor of the Estate of Dorothy Jean Ross Lusk, Deceased, <br><br> Plaintiff, <br> v. <br><br> **ALSATA SALIMATU LAMIN, et al.,** <br><br> Defendants. | Case No. 2:20-cv-6064 <br><br> Judge Graham <br><br> Magistrate Judge Vascura |

## **OPINION AND ORDER**

Plaintiff brings the present action *pro se* alleging that Defendants engaged in a conspiracy to conceal an accident which injured and lead to the death of his mother, Dorothy Jean Ross Lusk ("Dorothy"). Pending before the Court is Defendants' motion to dismiss, Doc. 24, and Plaintiff's motion to disqualify counsel and opposition to two defendants' joinder to the motion to dismiss. Docs. 46, 50. For the reasons that follow, Defendants' motion to dismiss is granted and Plaintiff's motions are denied.

### I. Background

#### A. Factual Background

The facts are taken from the complaint and viewed in the light most favorable to Plaintiff. Dorothy was a 96-year-old resident of an extended care facility owned by Defendant SHCP Franklin Inc. d/b/a/ Crown Pointe Care Center ("Crown"). Crown is owned by Defendant Foundations Health Solutions, L.L.C. Dorothy suffered from dementia and was non-ambulatory and non-verbal, but had no life-threatening medical conditions. Doc. 34 at 6. Her health began deteriorating rapidly on April 5, 2016, leading to her death on April 11, 2016. Doc. 34 at 10. The coroner

1

reported that Dorothy's death was caused by a medical decline following a left humerus fracture. Doc. 34-3 at 23. The coroner further found that her manner of death was an accident. Doc. 34-3 at 23.

Dorothy fractured her left humerus in a fall caused by Defendants Aboudou Mwegnimta Djaodo and Isata Otole Kargbo, nurse aids at Crown. Doc. 34 at 6. Djaodo and Kargbo did not call 911 or otherwise obtain immediate emergency medical treatment for Dorothy. Doc. 34 at 6. Instead, Defendant Alsata Salimatu Lamin, floor nurse at Crown, merely called Plaintiff on April 5, 2016 to inform him that "Dorothy was complaining of pain on her left side." Doc. 34 at 7. This call occurred at 11:42 a.m. despite Lamin reporting that she was unaware Dorothy was in pain until 11:55 a.m. Doc. 34 at 7.

Crown responded to Dorothy's pain in an uncharacteristic way. Generally, complaints of pain would not require the Supervisor Nurse, Brian Kenneth Pulliam, to come in on his day off. Doc. 34 at 8. Yet in response to Dorothy being in pain, Crown called Pulliam in to perform an examination. Doc. 34 at 8. Pulliam arrived at Crown at 3:00 PM and ordered a mobile X-ray of Dorothy's left humerus. Doc. 34 at 8. At 5:42 P.M. the mobile X-ray revealed that Dorothy had an acute humeral neck impacted fracture. Doc. 34-2 at 24.

Director of Nursing Lynn Marie Gutridge then falsely claimed that Dorothy's injury was a spontaneous fracture associated with osteoporosis which did not need immediate emergency medical treatment. Doc. 34 at 9. Accordingly, Gutridge ordered a non-emergency ambulance from a private company located about 46 minutes away from Crown to transport Dorothy to Riverside Methodist Hospital's emergency room. Doc. 34 at 8. The ambulance arrived at Crown at 6:40 p.m. and at Riverside Methodist Hospital at 7:23 p.m. Doc. 34 at 8.

Riverside Methodist Hospital took additional X-rays, which revealed an impacted left humeral facture. Doc. 34-3 at 4. Dorothy had her arm placed into a sling and was transported back to Crown. Doc. 34 at 9. An EMT who transported Dorothy back to Crown noted that Dorothy was "being treated for a fractured arm after a fall earlier." Doc. 34 at 9. Dorothy's health then declined rapidly, leading to her death on April 11, 2016. Doc. 34 at 10.

Suspicious conduct continued after Dorothy's death. Pulliam and Crown's Medical Director Daniel Lawrence Miller desired to report that Dorothy died of natural causes, thereby avoiding a requirement to report Dorothy's death to the coroner. Doc. 34 at 10. Plaintiff objected and requested that Dorothy's death be reported. Doc. 34 at 10. Crown initially refused, but then reported Dorothy's death to the coroner without indicating that she had a broken bone. Doc. 34 at 10. The coroner declined to examine Dorothy. Doc. 34 at 10. At Plaintiff's insistence, Crown again reported Dorothy's death to the coroner, this time noting Dorothy's broken bone. The corner then agreed to examine Dorothy's body to determine the cause and manner of her death. Doc. 34 at 10. The corner reported that Dorothy's death was caused by a medical decline following a left humerus fracture and that the manner of death was an accident. Doc. 34-3 at 23.

Plaintiff attempted to investigate how Dorothy was injured by questioning the staff at Crown. Doc. 34 at 11. Defendant Christa J. King, Crown's administrator, prevented Plaintiff from doing so. Doc. 34 at 11. King told Plaintiff that he was forbidden from questioning Crown staff and to direct inquiries to her. Doc. 34 at 11. She also informed Plaintiff that she conducted an internal investigation and found that the cause of Dorothy's injury was unknown, and that no incident occurred at Crown. Doc. 34 at 11.

Janet L. Harnett, Crown's business office manager, suggested that Plaintiff file a complaint with the Ohio Department of Health. Doc. 34 at 11. Plaintiff filed the complaint on June 1, 2016.

3

Doc. 34 at 12. The Ohio Department of Health investigated and determined that Crown complied with its regulations. Docs. 34 at 12; 34-3 at 29. Plaintiff asserts that Harnett made the suggestion because she "knew the [Ohio Department of Health] would exonerate them, not to help Plaintiff discover the truth." Doc. 34 at 11.

In sum, Plaintiff asserts that a company-wide conspiracy occurred to conceal that Dorothy was injured at Crown and prevent her from receiving timely medical services. Plaintiff alleges that Djaodo, Kargbo, and Lamin participated in the conspiracy to fraudulently conceal the accident, "motivated by Dorothy's status [as a] handicapped and disabled resident of CROWN . . . ." Doc. 34 at 7. Plaintiff alleges that King furthered the conspiracy by "reporting to a federal agency the cause of the trauma injury was 'unknown' . . . motivated by Dorothy's status as a handicapped and disabled resident of Crown, hoping to 'bury the truth', thereby avoiding any possible criminal investigations into [her] role[] in the conspiracy." Doc. 34 at 11-12. Finally, Plaintiff alleges that Crown and Foundations Health Solutions, L.L.C. "were motivated to further the conspiracy to fraudulently conceal the 'Accident' that caused Dorothy's trauma injury to avoid violating [an agreement] by preventing disclosure that they failed to report the 'Accident' and Dorothy's death to the Franklin County Ohio Coroner." Doc. 34 at 13.

## B. Procedural Background

Plaintiff's second amended complaint asserts that Defendants engaged in a conspiracy to deprive Dorothy of her Fourteenth Amendment Rights to Due Process and Equal Protection in violation of 42 U.S.C. § 1985(3). Doc. 34 at 14-15. He raises as additional "claims" (1) deliberate indifference to immediate emergency medical needs; (2) pain and suffering; and (3) fraudulent concealment. Doc. 34 at 15.

Plaintiff first presented these claims in his amended complaint, filed February 11, 2021, against Lamin, King, Crown, Foundations Health Solutions, L.L.C., and two John Does. Doc. 21. Those defendants filed the pending motion to dismiss on February 25, 2021. Doc. 24. Plaintiff then learned the identities of Djaodo and Kargbo (the "Joined Defendants") and filed a substantively identical second amended complaint specifically naming them. Doc. 34. Defendants Lamin, King, Crown, and Foundations Health Solutions, L.L.C. filed a notice that their motion to dismiss applies to the second amended complaint. Doc. 41. Defendants Djaodo and Kargbo then joined the motion to dismiss. Docs. 44, 49. Plaintiff opposes Djaodo and Kargbo's joinder to the motion to dismiss and moved to disqualify their counsel. Docs. 46, 50.

Defendants' motion to dismiss and Plaintiff's opposition to joinder and motion to disqualify counsel have been fully briefed and are ripe for a decision.

## II. Opposition to Joinder and Motion to Disqualify Counsel

Plaintiff asserts that "by representing [Djaodo and Kargo in addition to their co-defendants], Counsel attempts to block [Djaodo and Kargo's] untainted answer by asserting [their] Joinder in the co-defendant's pending Motion to Dismiss." Doc. 46 at 4; 50 at 4. In other words, Plaintiff fears that defense counsel's representation of Djaodo and Kargo is tainted by the conflict of interest created by their simultaneous representation of the co-defendants such that defense counsel is preventing Djaodo and Kargo from making admissions which would harm their co-defendants.

This concern is rooted in Rule 1.7 of the Ohio Rules of Professional Conduct, which provides in full:

> (a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:
>
> > (1) the representation of that client will be directly adverse to another current client;

5

    (2) there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.

(b) A lawyer shall not accept or continue the representation of a client if a conflict of interest would be created pursuant to division (a) of this rule, unless all of the following apply:

    (1) the lawyer will be able to provide competent and diligent representation to each affected client;

    (2) each affected client gives informed consent, confirmed in writing;

    (3) the representation is not precluded by division (c) of this rule.

(c) Even if each affected client consents, the lawyer shall not accept or continue the representation if either of the following applies:

    (1) The representation is prohibited by law;

    (2) The representation would involve the assertion of a claim by one client against another client represented by the lawyer in the same proceeding.

A motion to disqualify counsel may be used to notify the court of an alleged breach of ethical duties. *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002) (citation omitted). And courts possess the authority to disqualify attorneys. *Id.*; *CareToLive v. von Eschenbach*, No. 2:07-CV-729, 2007 WL 3389927, at *1 (S.D. Ohio Nov. 7, 2007) (citation omitted). But courts must be cautious because motions to disqualify counsel "can be misused as techniques of harassment." *Id.* (citation and internal quotations omitted). The alleged breaches of ethical duties may not be speculative – there must be "a reasonable possibility that some specific, identifiable impropriety actually occurred." *Moses v. Sterling Commerce (America), Inc.*, 122 F. App'x 177, 183-84 (6th Cir. 2005) (citation omitted). The moving party bears the burden of showing the need for disqualification. *CareToLive,* 2007 WL 3389927 at *1. Generally, courts within the Sixth Circuit find that only former clients have standing to move to disqualify counsel on the basis of a conflict of interest. *Home Fed. Bank of Tennessee v. Home Fed. Bank Corp.*, No. 3:18-

CV-379-JRG-DCP, 2020 WL 6038054, at *15 (E.D. Tenn. Mar. 19, 2020), report and recommendation adopted as modified, No. 3:18-CV-00379, 2020 WL 3568316 (E.D. Tenn. July 1, 2020).

Regardless of whether Plaintiff has standing to move to disqualify defense counsel, Plaintiff's motion fails because he merely speculates that a conflict of interest may occur later in this litigation. Specifically, Plaintiff makes the following assertions:

- The Joined Defendants "**may** have cross-claims against [their] co-defendants and also be in fear [their] former employers, who are co-defendants, will negatively impact [their] career by providing unfavorable work references if [they do] not maintain [] silence as to what happened. Docs. 46 at 3; 50 at 3 (emphasis added).

- "The interests of the co-defendants **may** diverge and prejudice Plaintiff in getting the truth." Docs. 46 at 4; 50 at 4 (emphasis added).

- "**Regardless of whether actual conflict exists**, there is a **potential** conflict of interest inherent in counsel's simultaneous representation of [the Joined Defendants] and [their] co-defendants . . . ." Doc. 46 at 4 (emphasis added).

- "The co-defendants in this Case **may** have differing interests . . . ." Docs. 46 at 4; 50 at 4 (emphasis added).

Plaintiff's speculations do not warrant the Court's intervention. *See CareToLive*, 2007 WL 3389927 at *2 ("Such wholly speculative 'conflicts' fall woefully short of what must be shown to demonstrate a conflict of interest.").

Plaintiff uses his reply brief to his motion to disqualify counsel as an opportunity to present new arguments. This is improper. It is well-established that a party "cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in the opposition." *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002) (citation omitted).

Even absent this procedural issue, Plaintiff's new arguments fail. Plaintiff argues in his reply brief that:

- Defense counsel did not obtain conflict waivers from the Joined Defendants or the corporate defendants. Doc. 54 at 2-3.

7

- Defense counsel "very likely solicited Djaodo as a *pro bono* client in exchange for his silence regarding the conspiracy to cover-up the accident at issue . . . ." Doc. 54 at 3.

- "If Djaodo and Kargbo own separate professional liability insurance, the law requires they have separate counsel." Doc. 54 at 3.

- There is no evidence that defense counsel provided Djaodo and Kargbo with an adequate warning that counsel represented Crown and not Djaodo and Kargbo.[1] Doc. 54 at 4.

- "Joint Representation of Djaodo and Kargbo allows Counsel to hide their true culpability by controlling their testimony and furthers the conspiracy to cover-up the accident at issue." Doc. 54 at 5.

None of these unsupported assertions show that defense counsel had a conflict of interest or engaged in other conduct warranting dismissal.

The act which Plaintiff takes issue with is Djaodo's and Kargbo's joinder in the motion to dismiss. Plaintiff fears that defense counsel took this step to prevent Djaodo and Kargbo from making admissions in their answers which could harm their co-defendants. But this is mere speculation. It is unsurprising that Djaodo and Kargbo joined in the motion to dismiss as they too have an interest in having the case against them dismissed. And there is nothing improper in them doing so. Therefore, Plaintiff has failed to show that defense counsel should be disqualified or that Djaodo and Kargbo should be prevented from joining in the motion to dismiss.

### III. Motion to Dismiss

Though not entirely clear, Plaintiff's second amended complaint appears to assert one cause of action – that Defendants violated 42 U.S.C. § 1985(3) by conspiring to deprive Dorothy of her Fourteenth Amendment Rights to Due Process and Equal Protection by being deliberately indifferent to and concealing her injuries, thereby depriving her of immediate emergency medical

---

[1] The Court notes that defense counsel does represent Djaodo and Kargbo. Further, Plaintiff does not allege that defense counsel had any meetings with Djaodo and Kargbo regarding the present action before representing Djaodo and Kargbo.

8

treatment, based on her status as a disabled individual.[2] *See generally* Doc. 24. Defendants move to dismiss this claim, asserting that the second amended complaint fails to state a claim upon which relief can be granted and that the claim is so devoid of merit that the Court lacks subject matter jurisdiction. *See generally* Doc. 24.

### A. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Federal courts obtain jurisdiction through the Constitution and federal statutes. *Id.* Two broad sources of subject matter jurisdiction are: (1) 28 U.S.C. § 1331, providing subject matter jurisdiction in actions "arising under the Constitution, laws, or treaties of the United States" (federal question jurisdiction), and (2) 28 U.S.C. § 1332, providing subject matter jurisdiction in civil actions between citizens of different states where the amount in controversy exceeds $75,000 (diversity jurisdiction).

Plaintiff asserts that the Court has federal question jurisdiction because his claim is brought under a federal law, 42 U.S.C. § 1985. Doc. 34 at 17 ("Jurisdiction of this Court is invoked under 28 U.S.C. § 1331 and 42 U.S.C. § 1985."). Defendants argue that this is insufficient to produce subject matter jurisdiction because Plaintiff's § 1985(3) allegations "fail[] to state a claim upon which relief can be granted." Doc. 24 at 7.

Generally, federal question jurisdiction is not defeated merely because the federal claim alleged ultimately fails. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 331 (6th Cir. 2007) (quoting *Williamson v. Tucker*, 645 F.2d 404, 416 (5th Cir. 1981)). The exception to this rule is that federal question jurisdiction does not exist when "the allegations of a complaint

---

[2] The second amended complaint also labels as "claims" deliberate indifference to emergency medical needs, pain and suffering, and fraudulent concealment, but fails to assert a legal theory on which to base these claims. *See* Doc. 34 at 15.

9

are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *See Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans v. Lavine*, 415 U.S. 528, 536-67 (1974)). A case is frivolous if it "lacks an arguable basis either in law or in fact. *Clay v. Metro. Gov't*, 46 F. App'x 348 (6th Cir. 2002) (citing *Dellis v. Corr. Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001)). This exception applies "only in the rarest of circumstances where . . . the complaint is deemed totally implausible." *Apple*, 183 F.3d at 480.

As discussed below, Plaintiff's second amended complaint ultimately fails to state a claim upon which relief can be granted. But the complaint's allegations are not so frivolous as to render the complaint totally implausible. Therefore, the Court declines to dismiss Plaintiff's complaint for lack of subject matter jurisdiction.

### B. Failure to State a Claim

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a claim must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (internal citations omitted). A Court is to construe *pro se* pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

28 U.S.C. § 1985(3) creates a cause of action against the participants of conspiracies to deprive others of legal rights. *See Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 223 (6th Cir. 1991) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971)). The elements of this

10

cause of action are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to either person or property or a deprivation of any right or privilege of a United States citizen. *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983); *Conklin v. Lovely*, 834 F.2d 543, 548 (6th Cir.1987) (citation omitted).

Defendants assert that Plaintiff's claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for three reasons: (1) the second amended complaint does not plead the claim with the requisite specificity; (2) the second amended complaint fails to plead state action; and (3) the second amended complaint fails to plead a class-based animus.

### 1. Pleading Specificity

To plead a conspiracy under § 1985(3), a Plaintiff "must allege facts that, if true, would show that Defendants either acted in concert or in furtherance of a common objective to injure Plaintiff[]." *Christian Separatist Church Soc'y of Ohio v. Ohio Dep't of Rehab. & Corr.*, No. 2:15-CV-2757, 2015 WL 5822679, at *4 (S.D. Ohio Oct. 1, 2015), report and recommendation adopted, No. 2:15-CV-2757, 2016 WL 2585648 (S.D. Ohio May 5, 2016) (citing *Smith v. Thornburg*, 136 F.3d 1071, 1078 (6th Cir. 1998). "Conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (citation and internal quotations omitted).

Contrary to Defendants' assertions, the second amended complaint is pled with an adequate degree of specificity. Construing Plaintiff's *pro se* complaint liberally, Plaintiff alleges a company-wide conspiracy to delay providing Dorothy emergency medical care to conceal that Dorothy was

11

injured at Crown and avoid criminal prosecution. More specifically, he alleges that Djaodo and Kargbo caused Dorothy to fall and become injured. Doc. 34 at 6. Djaodo and Kargbo then conspired with Defendant Lamin, King, Crown, and Foundation Health Solutions to conceal Dorothy's fall. As evidence of this conspiracy, Plaintiff asserts that Lamin gave a false report of when the injury was discovered and King falsely asserted that the cause of Dorothy's injury was unknown. Docs. 34 at 7, 11. The Court concludes that these allegations are adequately specific to allege a conspiracy.

### 2. State Action

Not every § 1985(3) cause of action requires a showing of state action. Whether state action is required depends on the nature of the predicate right. *Volunteer*, 948 F.2d at 226. If the predicate right is protected against interference from all actors, then no showing of state action is required. *Id.* If, however, the predicate right is protected only from interference by the state, such as violations of the Fourteenth Amendment, a showing of state action is required. *Id.* State action occurs when "the defendants acted under state authority or were themselves state actors. *Gerber v. Herskovitz*, 14 F.4th 500, 511 (6th Cir. 2021) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 938–39 (1982)).

Plaintiff's claim is expressly predicated on rights under the Fourteenth Amendment. Therefore, Plaintiff is required to plead state action. Construed liberally, Plaintiff's complaint pleads that Defendants interfered with Dorothy's access to state-provided 911 services. But private interference with state action does not constitute state action. Plaintiff is required to plead that Defendants themselves acted under state authority or were state actors. *Id.* The second amended complaint does neither. It names as defendants two companies (SHCP Franklin, Inc. and Foundations Health Solutions, L.L.C., and their employees.

### 3. Class-Based Animus

The Supreme Court has found that a necessary element of § 1985(3) claims is the existence of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Griffin*, 403 U.S. at 102. The Sixth Circuit has elaborated that classes protected by § 1985(3) are "1) classes who receive heightened protection under the Equal Protection Clause; and 2) those individuals who join together as a class for the purposes of asserting certain fundamental rights." *Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493, 498 (6th Cir. 2004) (citing *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000)) (cleaned up).

Plaintiff asserts that Dorothy was conspired against based on her inclusion in the class of disabled individuals. To support that disability status is a class protected by § 1985(3), Plaintiff cites to *Tyus v. Ohio Dept. of Youth Services*, 606 F. Supp. 239 (S.D. Ohio 1985). The district court in *Tyus* did conclude that disabled individuals constitute a protected class. *Id.* at 246-47. But the holding in *Tyus* does not reflect the current state of the law. As explained above, a protected class must receive heightened protection under the Equal Protection Clause. *Warner*, 104 F. App'x at 498. Disability status has not received suspect or quasi-suspect status. *Bartell*, 215 F.3d at 560 (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 442 (1985)). Therefore, disability status is not a class protected by § 1985(3). *Id.* at 559 (Section 1985(3) "does not cover claims based on disability-based discrimination or animus.") Because disability status is not a class protected by § 1985(3), Plaintiff's second amended complaint fails to plead class-based animus.

Plaintiff, in his response brief, asserts that his claim could also be brought on the basis that Dorothy is a woman because gender is a class protected by § 1985(3). Doc. 30 at 10-11. He asks the Court for leave to amend his complaint to reflect that Dorothy is a woman if the Court deems it necessary. Doc. 30 at 11. Such an amendment would be futile. Plaintiff makes no allegation that

Defendants conspired against Dorothy because she was a woman. Thus, amending Plaintiff's complaint to merely reflect that Dorothy was a woman fails to remedy the flaws in his second amended complaint.

### IV. Conclusion

For the above reasons, Defendants' motion to dismiss, Doc. 24, is **GRANTED**, Plaintiff's oppositions to joinder in motion and motions to disqualify counsel, Docs. 46 and 50, are **DENIED**, and Plaintiff's Complaint is **DISMISSED**.

**IT IS SO ORDERED**.

    s/ James L. Graham
    JAMES L. GRAHAM
    United States District Judge

DATE: March 29, 2022